UNITED STATES

v.

**Senior Airman Joseph A. GROH, FR, 273–46–2641, United States Air Force.**

**ACM 25770.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 Nov. 1986.

Decided 29 June 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Laurence M. Soybel.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Lieutenant Colonel Morris A. Tanner, Jr.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

A missing personal computer led law enforcement agents to interview the appellant

on 23 September 1986. At that time he agreed, if asked, to submit to a polygraph examination. A week later, 1 October, the appellant was again questioned, but this time as a principal suspect in the theft. After being given the proper codal warnings and told of his right to counsel, he denied any involvement in the theft and again agreed to take a polygraph test if one were offered. Later, the appellant requested an attorney and was given the name and phone number of the area defense counsel and the questioning stopped. Subsequently, he was asked to consent to a search of his room and whether he still wished to take a polygraph test. He consented to his room being searched;[1] however, the record is unclear on the response concerning the polygraph test.

Either during the trip to the appellant's quarters to search it or on the return, he asked the investigating officers how long the investigation would take as he was to get out of the Air Force at the end of October. The officers in the car with the appellant testified that "[he] asked when he would be able to take the polygraph since he was due to separate from the Air Force ... on [25 October 1986], and he wanted to hurry up and get this investigation closed so he could depart the station." The appellant admitted asking the question concerning the length of the investigation, but denied mentioning taking a polygraph. After his quarters were searched, he was returned to his duty section.

An appointment was made for the appellant to take a polygraph examination on 8 October which he did not keep because he thought it was scheduled for the following day. On 9 October the appellant went to the Office of Special Investigations (OSI) where he met the OSI agent who would administer the test. At the outset the appellant was again given the codal warnings and reminded of his right to counsel which he acknowledged in writing. He testified that he did not see an attorney between his

interview with the OSI on 1 October and 9 October because he thought the lawyer whose name and phone number he was given "would be contacting [him]." He further acknowledged that although he knew he had the right to a lawyer, all the information he was given by the OSI agent who was to conduct the polygraph test did not "register" with him.

Prior to any polygraph test being administered, the appellant gave a written statement admitting the theft of an IBM PC computer from his work area on 17 September 1986. After hiding the computer in his room for several days, he put it in a box and placed the box in a dumpster that was parked next to the barracks. He has not seen the computer since that time.

The crux of the appellant's appeal goes to the admissibility of his 9 October statement. He argues, citing *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), that since he requested an attorney during the 1 October interview, all further contact with him was prohibited unless an attorney was present. He acknowledges that the police are free to listen to volunteered statements, but contends that the facts here support the conclusion that any statement he made, i.e., agreeing to take a polygraph test was the result of further police questioning after he invoked his right to counsel rather than a voluntary waiver of that right. In *Edwards v. Arizona, supra,* the United States Supreme Court held that once an accused invokes his right to counsel, he may not be subjected to further interrogation until counsel is made available *unless* he *initiates* further communication, exchanges or conversations with the police.

The *Edwards* rule was discussed at length by the Supreme Court in *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), where an accused requested an attorney during custodial questioning. The interrogation stopped and, while he was being taken back to

---

**1.** In *United States v. Roa,* 20 M.J. 867 (A.F.C. M.R. 1985), we held that an appellant's consent to a search was not a "statement" within Article 31 of the Code and therefor did not amount to an "interrogation."

detention, the defendant asked, "Well, what is going to happen to me now?" The Court said this question *initiated* discussion for the purpose of the *Edwards* rule as it evinced a willingness for a generalized discussion about the investigation.

▮▮ The *Edwards* rule requires two separate inquiries by the trial judge. First, he must determine whether the accused actually invoked his right to counsel. Second, if the accused did invoke his right to counsel, the trial judge may admit answers to further questioning only on a finding that the accused himself initiated further discussions with the authorities and that he knowingly and intelligently waived the right to counsel which he had previously invoked. *United States v. Walker*, 624 F.Supp. 103 (D.Md.1985). Whether an accused initiated further discussions with police officers is a factual question to be determined by the trial judge using a preponderance of the evidence standard. *United States v. Reeves*, 21 M.J. 768 (A.C. M.R. 1985).

▮▮ Here the trial judge found that the appellant initiated further discussions with the OSI agents by inquiring how long the investigation would take and whether it would be completed prior to the termination of his enlistment. True, the appellant denied making any reference to a polygraph test while he was in the car, but this is a factual dispute. The transcript supports a conclusion that the appellant initiated a willingness to discuss the investigation further. A valid waiver of the right to counsel depends on a totality of circumstances which includes the appellant's background, experience and conduct. *United States v. Binder*, 769 F.2d 595 (9th Cir.1985). The appellant is a 29 year old serviceman who achieved the rank of staff sergeant in a little over four years. He possesses above average intelligence and has two years of college. The trial judge found that the appellant's waiver of his right to counsel to remain silent on 9 October 1986, was knowing, intelligent and voluntary. We find nothing in the record to warrant disturbing that ruling. *Pittman v. Black*, 764 F.2d 545 (8th Cir.1985).

Appellate defense counsel suggest that the recent Court of Military Appeals decision in *United States v. Applewhite*, 23 M.J. 196 (C.M.A. 1987), is directly analogous to the case before us. There, after an accused asserted his right to counsel the questioning was not stopped, and he was asked if he would consent to a polygraph examination. In ordering a new trial as to the affected specifications, the Court held that the accused *merely acquiesced in, rather than initiated,* further questioning. In the case before us, we conclude as did the trial court, that a waiver of a previously invoked right was established. The two situations are factually distinguishable.

▮▮ In a related assigned error appellate defense counsel argue that the trial judge should have suppressed the appellant's 9 October statement as it was obtained in violation of his right to counsel. As earlier indicated in this opinion, after the appellant requested a lawyer, he was given the name and phone number of the area defense counsel. He did not, however, see this individual, contending at trial that he thought the lawyer would contact him. Appellate counsel maintain that this is a reasonable belief given the "common practice for the military to set up appointments for its members and then notify the member of the time and date." Appellate counsel also suggest that not only must counsel be made available if a suspect asks for one, but law enforcement authorities should insure that a suspect *actually* consulted with a lawyer.

That is not our understanding of what is required by *Edwards v. Arizona, supra.* The Court in *Edwards* held that after a suspect invokes his right to counsel, questioning must cease "until counsel has been *made available* to him" unless he initiates further conversation with law enforcement officials. In *United States v. Whitehouse*, 14 M.J. 643 (A.C.M.R. 1982), the Army Court of Military Review was faced a situation similar to the one before us. The issue there was whether counsel was "made

available" to the appellant during the period between the invocation of his right to counsel and subsequent custodial interview. The Army Court of Military Review held that the obligation mandated by *Edwards v. Arizona* that counsel be "made available" requires only that an accused be given a reasonable opportunity to consult with counsel and exercise his prerogative as to whether he wished to remain silent or speak with the authorities. The decision is the accused's and if it is a knowing, intelligent and voluntary one it meets the requirements of *Edwards v. Arizona*.

Once again it is necessary to look at the appellant's background and experience to determine if his waiver of the right to counsel was valid. In view of his education and obvious intelligence, we find it difficult to accept that after asking to see a lawyer and having been given his name and phone number, he would sit back and wait for this individual to contact him. The fact that the appellant initiated further discussion with law enforcement officials indicates he no longer wished to have counsel present. This circumstance, coupled with the eight day period in which he could have seen counsel had he chosen to, supports the conclusion that he voluntarily waived the right to counsel. Accordingly, the statement was properly admitted in evidence.

The invited issues are resolved adversely to the appellant. Mil.R.Evid. 304(g); *United States v. Wagner*, 20 M.J. 758 (A.F.C. M.R. 1985); *United States v. Wheatcraft*, 23 M.J. 687 (A.F.C.M.R. 1986). The finding of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge HOLTE concur.