UNITED STATES

v.

**Senior Airman Edward L. BRILEY, FR 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, United States Air Force.**

**ACM 26559.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 Nov. 1987.

Decided 2 Aug. 1988.

[redacted]

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major William J. Reichart.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Lieutenant Colonel Morris A. Tanner, Jr., and Major Carole W. Hanson.

Before LEWIS, MICHALSKI and BLOMMERS, Appellate Military Judges.

DECISION

LEWIS, Senior Judge:

[redacted] The appellant was found guilty of wrongful use of cocaine on divers occasions despite his plea of not guilty. His sentence, as adjudged and subsequently approved, consists of a bad conduct discharge, confinement for four months, forfeiture of $100.00 per month for four months and reduction to airman basic. The primary focus of the trial was a motion by the appellant to suppress certain pretrial statements he made to investigators and evidence allegedly derived therefrom. The appellant was unsuccessful in the suppression motion at trial. He preserved the issues raised at the trial level by his not guilty plea which, in this case, was combined with a confessional stipulation admitting his guilt in fact. Having received responses from appellate counsel to a specified issue questioning the validity of the described procedure, we are satisfied that it has been recognized as a permissible method of preserving appellate issues in

military law. *See United States v. Bertelson,* 3 M.J. 314, 315–316 (C.M.A.1977), citing *United States v. Rempe,* 49 C.M.R. 367 (A.F.C.M.R.1974).

In this case the appellant was questioned by agents of the Office of Special Investigations concerning his knowledge of drug abuse by other members. Our review of the record suggests that his interview was being conducted simultaneously with the interviews of a number of other military personnel. He had been identified through a prior statement of a drug abuse suspect as the co-occupant of an off base residence where cocaine was allegedly used by certain military members during the course of a Labor Day gathering. According to the agents conducting the interview the appellant had not been specifically identified as a drug abuser nor even as a witness to drug activity prior to his initial interview. Inasmuch as the appellant was considered to be a potential witness rather than a suspect the interview was conducted without a preliminary rights advisement. *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). The appellant stated that he had been present at the Labor Day party but that he did not notice any drug usage there. When he was furnished the names of two other individuals being investigated he advised of three instances prior to Labor Day when he saw one or the other engaging in cocaine use or activity which appeared to be cocaine use.

The agents testified that the appellant's statements created no suspicion in their minds that he might be engaged in drug abuse until after the initial interview was terminated. Suspicion began to center on the appellant later that day when one of the agents reviewed a statement that had been obtained from another airman who stated that the appellant had been present at one point during the Labor Day gathering at a place where cocaine was possibly being openly displayed and used by others in the immediate vicinity. This statement, of course, was in apparent conflict with the appellant's assertion that he had seen no drug related activities at the party. A short time later the appellant was interviewed a second time. On this occasion he was advised that he was suspected of use and possession of controlled substances. Following a full rights advisement, the appellant admitted his involvement in cocaine use on several occasions, including the Labor Day party.

■ The appellant testified concerning the circumstances of the two interviews pursuant to the motion to suppress his statements and other evidence claimed to have been derived therefrom. His version of events differed markedly from those of investigative agents who were called by the prosecution. Many of these differences were focused on a related issue of voluntariness, an issue which we find was correctly decided at trial. The military judge resolved disputed factual issues adversely to the appellant, and we find no basis from the record to disturb his findings. *United States v. LeCappelain,* 9 M.J. 562 (A.F.C.M.R.1980), *pet. denied,* 9 M.J. 205 (C.M.A. 1980); *United States v. Collier,* 1 M.J. 358, 363 (C.M.A.1976). Based on the previous discussion and on further facts elicited at trial, which we find no need to set forth in further detail herein, we conclude that there was no basis for suspecting the appellant of drug abuse at the time of the initial questioning and that he was given an appropriate advisement as soon as this suspicion arose in the minds of the investigators. *United States v. Morris,* 13 M.J. 297 (C.M.A.1982). The military judge did not err in denying the defense motion to suppress. We find it unnecessary to rely in any manner upon *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), cited by appellate government counsel.

Certain issues raised at trial and again on appeal, while they do not affect the resolution of the case, illustrate that an interrogation of one who is considered a potential witness to drug abuse by his fellow military members is fraught with rights advisement problems. For instance, Air Force members are required to report suspected drug abuse to appropriate command and law enforcement authorities. Air Force Regulation 30–2, *Social Actions Program,* para. 3–17c (18 April 1986). In

*United States v. Heyward*, 17 M.J. 942 (A.F.C.M.R.1984), *rev'd in part on other, but related, grounds*, 22 M.J. 35 (C.M.A. 1986), we held that a noncommissioned officer may be charged with dereliction of duty for failing to abide by a predecessor provision. We did not resolve in *Heyward* the question of whether enlisted personnel of lesser rank might be similarly charged. 17 M.J. at 945, n. 6. The record in this case suggests, but does not clearly reflect, that the appellant was a noncommissioned officer on the day of the interview and that he might have been at the time of the Labor Day party. However, it is not important that this factual matter be resolved at this point.

The matter which does concern us is that the dereliction of duty implication, from our reading of the record, was not considered nor possibly even recognized as an issue by the agents who conducted the interview. In this case the agents' lack of awareness did not create a major problem. As matters developed in this case the appellant was not charged with the offense of dereliction of duty.[1] Therefore, the absence of an early, properly structured advisement to the appellant was not prejudicial. We recommend, however, that investigative agents be made aware of this aspect of military law by those staff judge advocates who foresee the possibility of pursuing charges of dereliction of duty for failures to report known or suspected drug abuse activities as appropriate circumstances arise.

A question of broader concern when investigative agents seek out witnesses to drug abuse is how much information a "witness" may reveal before he or she becomes a suspected drug abuser. A related question which an interviewer should ask (at least rhetorically) is why drug abusers might allow one to observe their illicit activities unless the observer is considered to be a trusted member of the group. This question is particularly germane in those situations in which the suspected abuse, rather than occurring in a military dormitory, is in a setting off base where the observer is voluntarily present and is presumably not subject to a captive environment.

■ A rights advisement becomes necessary at that point in an interview when the interviewer believes or reasonably should believe that the interviewee has committed an offense. *United States v. Morris, supra*, 13 M.J. at 298; *United States v. Anglin*, 18 U.S.C.M.A. 520, 40 C.M.A. 232, 235–236 (1969). This test appears to attempt to measure not only what was going on in the mind of an interviewer subjectively, but, objectively, what should have been going on in his mind at any given time during the interview. Of course, the Court of Military Appeals has recently emphasized that if suspicion exists in the mind of the interviewer before the interviewee utters a word, the requisite advisement should be given before an interrogation commences, without any form of accusatory preamble. *United States v. Byers*, 26 M.J. 132 (C.M.A. 1988).

What level of suspicion triggers the requisite belief or reasonable basis for belief that the interviewee had committed an offense? One statement of a quantified measure is found in *United States v. Churnovic*, 22 M.J. 401, 407–408 (C.M.A.1986). Therein, the Court observed that a "30% suspicion" of drug involvement was sufficient to require a Navy chief petty officer, who was apparently not a trained criminal investigator, to advise a subordinate of his rights prior to eliciting information from him.[2] Obviously, standard indicia of suspicion cannot easily be programmed into a foolproof checklist for investigators. It is clear that a potential witness to drug abuse activities must be approached with the utmost caution. Above all else, if a rights advisement is not provided at the outset, interviewers must maintain a keen sensitiv-

---

1. *See United States v. Heyward*, 22 M.J. 35 (C.M.A.1986), which discusses the relationship between dereliction of duty in this circumstance and actual involvement in the drug abuse not reported.

2. *Churnovic* requires thoughtful study. The issue of the lack of a rights advisement is closely interwoven with a question of unlawful inducement of incriminating responses.

ity to the common sense implications of what a particular witness may be revealing as an interview progresses.

We have examined the record of trial, the assignment of errors, the government's reply thereto and the responses of counsel to specified issues. We have concluded that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Judges MICHALSKI and BLOMMERS concur.